IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 1:19-cv-01121-RM

LLOYD INGRAM,

    Plaintiff,

v.

ANDREW SAUL, Commission of Social Security,

    Defendant.

---

**ORDER**

---

    This matter is before the Court on Plaintiff Lloyd Ingram's ("Ingram") request for judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) Ingram challenges the final decision of Defendant Andrew Saul, Acting Commissioner of the Social Security Administration ("Commissioner" or "Defendant"), by which he denied Ingram's application for supplemental security income under Title XVI of the Social Security Act ("Act"). The Administrative Law Judge ("ALJ") ruled Ingram has not been disabled within the meaning of the Act since the date his application was filed and is therefore not entitled to supplemental security income ("SSI").

    Defendant provided the Court with the administrative record. (ECF No. 11.) The parties have fully briefed the matter and it is ripe for adjudication. (ECF Nos. 21, 22, 23.)

    For the reasons set forth below, the Court AFFIRMS the ALJ's denial of Ingram's application for SSI.

I.      BACKGROUND

Ingram is a 56-year-old man, born on April 9, 1963, appearing *pro se*.[1] (ECF No. 21, at 1.) Ingram was 53 years old when he filed his application for SSI and 55 when the ALJ issued her denial. (Admin. R. ("Tr.") 24, 59.)  He has on-and-off work experience without much consistency over the past thirty years due to his being convicted of a criminal offense six times and being periodically incarcerated from about 1989. (*Id.* at 4.) Ingram last worked as a pantry goods cook in 2008 for a few months. (Tr. 34.) The record is unclear whether he stopped working in 2008 due to a period of incarceration; however, Ingram has not had a job since 2008 and has not held a job since his release from prison in March 2016. (Tr. 19, 34.) On June 14, 2016,[2] Ingram applied for SSI under Title XVI of the Act alleging he was disabled as of October 2, 2013 as the result of the following conditions: hearing impairment; attention deficit hyperactivity disorder (ADHD); posttraumatic stress disorder (PTSD); and vision impairment. (Tr. 72, 128.)

Ingram's application was denied, and he requested a hearing before an ALJ. (Tr. 81–93.) After conducting a hearing on May 24, 2018,[3] the ALJ affirmed the denial because she, relying on testimony from the  vocational expert, determined that "there are jobs that exist in significant numbers in the national economy that [Ingram] can perform." (Tr. 24–25.) Ingram requested review of the ALJ's decision (Tr. 125–27), but the Appeals Council ("Council") denied such review, making the denial the final opinion of the Commissioner. (Tr. 1–6.) Thereafter, Ingram timely requested judicial review. *See* 42 U.S.C. § 405(g).

---

[1] Because Ingram is proceeding *pro se*, the Court liberally construes his filings but will not act as his advocate. *See James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013); *U.S. v. Grant*, 809 Fed. App'x 474, 476 n.1 (10th Cir. 2020).

[2] The ALJ stated Ingram filed his application for SSI on April 11, 2016; however, this error does not affect this Court's decision.

[3] Plaintiff was represented by counsel at all times before the Commissioner. (*See* Tr. 6.)

Ingram challenges the ALJ's findings on his physical and mental limitations and argues the ALJ erred in four ways: (1) generally downplaying the severity of his impairments related to his mental limitations and anti-social behavior in light of the disability findings in the Med-9 forms; (2) ignoring the cumulative side effects of Ingram's medications; and (3) failing to consider Ingram's advanced age.[4] (ECF Nos. 21, 23.) Accordingly, Ingram contends he is disabled and unable to work, but more specifically, that he does not have the skills for employment and cannot be retrained. (ECF No. 23.)

### A.   Hearing Testimony

Ingram testified that since his most recent period of imprisonment he has been doing "just great." (Tr. 36.) He testified that he suffers from "mental lapses," which generally include an inability to focus or deal with people and primarily affect him when he leaves the house. (Tr. 36–37.) According to Ingram, he gets irritable and paranoid and experiences mood swings. (Tr. 38, 43–44.) Ingram also testified that he has some difficulty dealing with change. (Tr. 39, 50.) Ingram's mood is significantly affected by life stressors, including inconsistent living situations and the death of relatives. (Tr. 40–41.) Nonetheless, according to Ingram, his therapy has been helpful and pharmaceutical intervention has also been effective and have resulted in improved symptoms and mood stability. (Tr. 39–40, 42, 45.)

### B.   The ALJ's Decision

On August 15, 2018, the ALJ issued her decision denying Ingram SSI. (Tr. 13–25.) In reaching her decision, the ALJ followed the five-step sequential evaluation process for evaluating disability claims. (Tr. 13–25.) *See Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir.

---

[4] In his Reply, Ingram for the first time asserts the ALJ also erred in finding he could lift 25 to 50 pounds or more in an eight-hour workday. (ECF No. 23, at 2.) However, arguments raised for the first time in a reply brief are forfeited. *See SCO Grp., Inc. v. Novell, Inc.*, 578 F.3d 1201, 1226 (10th Cir. 2009).

2010). At step one, the ALJ found Ingram had not engaged in substantial gainful activity since the application date. (Tr. 15)

At step two, the ALJ determined Ingram suffered from the following severe impairments: (1) hearing loss; (2) dysthymic disorder; (3) generalized anxiety disorder; and (4) a history of post-traumatic stress disorder (PTSD). (*Id.*)

At step three, the ALJ determined Ingram's medically determinable impairments,[5] considered independently and in combination, did not meet the severity of a listed impairment. (Tr. 15–17.) After finding a lack of clinical findings regarding Ingram's claimed hearing loss that would rise to the level of a listing, the ALJ evaluated his mental health issues. (Tr. 16–17.) She concluded Ingram suffered from moderate limitations to his: (1) understanding remembering, or applying information; (2) interacting with others; and (3) adapting or managing oneself. (*Id.*) The ALJ found only a mild limitation with respect to Ingram's concentration, persistence, or maintenance of pace. (Tr. 17.) The ALJ relied heavily on notes taken during Ingram's clinic visits and the opinion of Dr. William Graham, a consultative psychiatrist. (Tr. 16–17.) She concluded that in the absence of two "marked" limitations or one "extreme" limitation, "paragraph B" criteria are not met. (Tr. 17.) The ALJ also concluded "paragraph C" criteria were not supported by the record. (*Id.*)

Before reaching step four, the ALJ determined Ingram had a:

residual functional capacity [("RFC")] to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant must avoid exposure to noisy, industrial type environments and can work in a setting no louder than an office setting. He must avoid communicating by phone any more than rarely, or no more than five percent of the time. He can understand, remember, and carry out simple, routine, repetitive instructions that can be learned in 30 days or less. He can work in close proximity to but not directly with the

---

[5] The ALJ also found that: (1) the record evidence does not suggest Ingram's visual impairment was significant; and (2) Ingram's alleged bipolar disorder and attention deficit hyperactivity disorder (ADHD) are not medically determinable. (Tr. 15–16.)

general public or coworkers, and must avoid crowded environments such as a busy restaurant or store, but can respond appropriately to simple changes in the work setting. (Tr. 17–18.)

Based on the RFC, the ALJ determined at step four that Ingram was unable to perform his past relevant work of pantry goods cook. (Tr. 23.)

At step five, based on the testimony of the vocational expert, the ALJ found Ingram could perform other jobs available in significant numbers in the national economy, specifically, industrial cleaner, laundry worker, and produce packer. (Tr. 24.) Therefore, the ALJ concluded that Ingram was "somewhat limited by his psychological symptoms," but that he exhibited a level of functioning that was "not consistent with a finding of disability" as defined by the Act. (Tr. 23–25.)

### C. Procedural History

Ingram appealed the ALJ's decision to the Council. (Tr. 125–27.) On March 25, 2019, the Council denied Ingram's request, making the ALJ's denial the final decision of the Commissioner. (Tr. 1–5.) Ingram appeals the denial. (ECF No. 1.)

## II. LEGAL STANDARD

As stated, the Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled. *Wilson*, 602 F.3d at 1139. The claimant bears the burden of proof at steps one through four; if the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five. *Id*. The Court's review of the Commissioner's decision "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1177–78 (10th Cir. 2020) (quoting *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than

a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)) (internal quotation marks omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Id*. (quotation marks and citation omitted). The Court may not reweigh the evidence or substitute its judgment for that of the agency. *Id.*; *see also Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016) (same).

Although a district court will "not reweigh the evidence or retry the case," it "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also* 42 U.S.C. § 405(g).

**III.   DISCUSSION**

Ingram raises three issues. First, Ingram argues the ALJ erred in her severity determination of his mental impairments, including failure to give enough weight to the Med-9 forms. (ECF No. 21, at 1–4.) Second, Ingram argues the ALJ did not appropriately determine the severity of the cumulative side effects of the medications he takes. (*Id.* at 3.) Finally, Ingram argues the ALJ failed to consider his advanced age. (*Id.* at 4.)

    **A.   The ALJ's Measure of Severity of Ingram's Mental Impairments is Supported by Substantial Evidence**

Ingram fails to explain how the ALJ's reasoning was incorrect or otherwise unsupported by the record. Specifically, he argues his diagnoses of ADHD, bipolar II, depression, and PTSD, make it impossible to operate in public on his own. (ECF No. 21, at 1–3.) However, the ALJ considered the relevant medical evidence and Ingram's testimony, and she gave specific reasons for discounting Ingram's subjective complaints regarding severity of mental impairments.

In the ALJ's thorough analysis of Ingram's medical history (Tr. 18–23), she addressed each piece of medical evidence and explained what weight she gave it and why. For example, the ALJ gave significant weight to Dr. Graham's opinion that Ingram suffered from mild to moderate impairments related to his (1) ability to understand, remember, and carry out instructions, (2) social functioning, interacting with coworkers, supervisors, and the general public, (3) adaptive functioning, dealing with the usual stresses associated with a competitive employment situation, completing a normal workday without interference from psychiatric symptoms, and without requiring special additional supervision; and mild impairment to his sustained concentration, persistence and pace (Tr. 21). She did so because Dr. Graham "performed a thorough psychological examination and he identified specific medical reasons for the limitations that he assessed" and because he is a psychiatrist and an "acceptable" medical source under Social Security regulations. (*Id.*); *see* Social Security Ruling ("SSR") 06-03p; 20 C.F.R. § 404.1513(a) (only acceptable medical sources can provide evidence to establish the existence of a medically determinable impairment); 20 C.F.R. § 404.1527(a)(2) (only acceptable medical sources can provide medical opinions). The ALJ also gave Dr. Graham's opinion great weight because it is "generally consistent with the overall mild to moderate severity of symptoms reflected in the longitudinal treatments records, the clinical findings observed by [Ingram's] treating providers, and [Ingram's] positive response to treatment." (Tr. 21.)

The ALJ gave little weight to the Med-9 forms created by advanced practice nurse Sue Orahood and physician's assistant Beth Walker, because the ALJ found: (1) the Med-9 forms are unsupported by "clinical findings or medical explanations," such as a failure to "perform a thorough psychological examination and [. . . ] formal mental status or cognitive testing" (Tr. 21–22); (2) Ms. Orahood's final conclusion of marked or extreme mental limitations are

inconsistent with her own treatment notes, such as Ingram's "ability to take public transportation, interact appropriately and communicate effectively with treating and examining medical providers, or get along well with his girlfriend and various family members (Tr. 22); and (3) she is not an "acceptable" medical source (*Id.*). *See* SSR 06-03p; 20 C.F.R. § 404.1513(a); 20 C.F.R. § 404.1527(a)(2). The ALJ considered the Med-9 forms to the extent they shed light on the severity of Ingram's mental impairment, but refused to adopt their ultimate diagnoses and conclusions that Ingram was disabled, because opinions regarding Ingram's ultimate disability determination are reserved to the Commissioner. *See* 20 C.F.R. § 416.927(d).

Ingram's arguments fail to show how the ALJ either (1) misinterpreted Ingram's medical records or (2) incorrectly weighed opinions of both acceptable and non-acceptable medical sources. Instead, the Court's review shows the ALJ's determination of the severity of Ingram's mental impairments is supported by substantial evidence.

  **B. The ALJ's Finding a Lack of Cumulative Side Effects is Supported by Substantial Evidence**

The ALJ noted during the analysis of Ingram's medical history that Ingram denied suffering from side effects of otherwise helpful treatment. (Tr. 20.) As a result, the ALJ determined Ingram's symptoms were for the most part being effectively managed with medication. (*Id.*) Ingram argues, however, that this is inaccurate and that his pharmaceutical cocktail (Trazadone, Hydroxyzine, Duloxetine, and Prazosin) causes inconsistent and unpredictable sleep effects, sometimes causing him to sleep for up to sixteen hours at a time. (ECF No. 21, at 3.) However, the ALJ recognized that when he was evaluated by Ms. Orahood on December 21, 2016, Ingram denied feeling any side effects. (*See* Tr. 20 (citing Tr. 265–66)); *see also Klein v. Colvin*, 25 F. Supp. 3d 1338, 1344 (D. Colo. 2014) (upholding symptom evaluation where the ALJ "noted plaintiff's admission that medication is effective at alleviating

his symptoms and causes no side effects."). Consequently, the ALJ's conclusion that Ingram's impairments were effectively treated without side effects is supported by substantial evidence.

### C. The ALJ Correctly Considered Ingram's Age

Finally, Ingram argues his advanced age makes it impossible for him to be hired. First, the ALJ explicitly stated that Ingram was 53 years-old when he filed his application, but was 55 as of April 8, 2018, "which is defined as advanced age (20 CFR 416.963)." (Tr. 24.) She incorporated this consideration into her Step 5 analysis. (*See id.* ("Considering the claimant's age, education, work experience, and residual functional capacity).) Second, whether Ingram's age makes it less likely that he will be hired is irrelevant to the ALJ's disability inquiry – the disability inquiry focuses on Ingram's *ability* to work, not whether he would be hired if he applied for work. *See* 42 U.S.C. § 1382c(a)(3)(B) (to be found disabled, the claimant must be unable to engage in past work or any other work existing in the national economy, "regardless of whether such work exists in the immediate area in which he lives, or whether a specific vacancy exists for him, or whether he would be hired if he applied for work."); 20 C.F.R. § 416.966(c) (a claimant will be found not disabled if his RFC and vocational background make it possible to do other work, regardless of the claimant's inability to get work, the hiring practices of employers, or the fact the claimant may not actually be hired to do work he could otherwise perform.); *see also Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (emphasizing the focus on whether the claimant is able to engage in other substantial gainful employment of which there is sufficient number of jobs in the national economy for a hypothetical person with claimant's impairments). Consequently, as the ALJ did consider Plaintiff's age in her analysis, this argument is not grounds to reverse the ALJ's conclusion.

9

IV.     CONCLUSION

Based on the foregoing, it is ORDERED:

(1)     That the Defendant's denial of supplemental security income under the Social Security Act is AFFIRMED;

(2)     That JUDGMENT shall enter in favor of Defendant and against Ingram; and

(3)     That the Clerk shall close the case.

DATED this 23rd day of September, 2020.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge